**[ORAL ARGUMENT NOT SCHEDULED]**

**Nos. 26-5086, 26-5087**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

PATSY WIDAKUSWARA, *et al.*,

Plaintiffs-Appellees,

v.

KARI LAKE, *et al.*,

Defendants-Appellants.

———————————

MICHAEL ABRAMOWITZ, *et al.*,

Plaintiffs-Appellees,

v.

KARI LAKE, *et al.*,

Defendants-Appellants.

———————————

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY
## PENDING APPEAL AND IMMEDIATE ADMINISTRATIVE STAY

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*
YAAKOV M. ROTH
  *Principal Deputy Assistant*
  *Attorney General*
DANIEL TENNY
DEREK WEISS
ELIZABETH HEDGES
BRANTLEY MAYERS
  *Attorneys*
  *Civil Division, Room 7230*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  (202) 616-5365

## INTRODUCTION

Last year, this Court stayed this district court's preliminary injunction requiring the return of hundreds of employees from administrative leave. Now that the district court has issued the same relief at summary judgment, this Court should issue the same interim relief now, pending appeal, for the same reasons. Neither Plaintiffs nor the district court identify any sound reason to deviate from last year's order.

The fundamental defect in the court's order remains the jurisdictional barrier to using the APA to review employment actions. In denying a stay below, the district court pivoted to focus on the union plaintiffs, but unions—no less than the employees they represent—cannot circumvent the Civil Service Reform Act (CSRA), as other district judges have recognized. Plaintiffs do not defend the district court's reasoning on that point, instead suggesting that the injunction here flowed from the district court's vacatur of a separate agency action (the Statutory Minimum Memorandum). That maneuver does not work either: the Supreme Court recently made clear that vacating agency guidance does *not* necessarily entail vacating all actions taken to implement that guidance, especially where (as here) a channeling regime may apply to the implementation actions.

That leaves the district court's original theory that third parties may sue to challenge employment actions even if the affected employees are channeled under the CSRA. That makes little sense. Third parties may sue to challenge agency actions or omissions that harm them, but internal personnel decisions are at least one step removed and cannot themselves be countermanded under the APA. Plus, the third parties here failed to show either standing or irreparable harm to warrant this injunction.

To top it off, Plaintiffs reprise arguments on the balance of the equities that this Court has already rejected and, parroting the district court, claim that "waste" supports an injunction. But such waste is the result of *another* district-court order preventing a reduction in force, not any government action. This Court should, like last year, stay the injunction on appeal.

## ARGUMENT

### I.    This Court's Stay Order Controls at the Stay Stage.

The government seeks "a stay pending appeal of the injunctive order to restore employees from administrative leave." Stay Mot. 3.[1] If that sounds familiar, it is because *this Court* already decided *this question* in *this case*.

---

[1] Plaintiffs mischaracterize the motion as seeking relief only from the deadline to comply with the injunction. That is incorrect. *See* Government's Opposition to Motion to Dismiss, Document # 2164890.

Plaintiffs respond that stay orders do not control the adjudication of subsequent summary judgment motions. Opp. 7-8. This misses the point. Stay orders *do* control the adjudication of *similar stay motions*, and this case now "does not otherwise differ . . . in any pertinent respect" from this case a year ago. *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). In 2025, the district court ordered USAGM to return to work the employees on administrative leave. Dkt. 99. This Court stayed that injunction on the ground that the district court likely lacked jurisdiction to enter it. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025). Now, the district court has ordered that same relief again. Order 2. Nothing about the "evidentiary record" (Opp. 8) that has since come into existence cures the jurisdictional deficiency. The law remains the same, and the district court remains without jurisdiction over personnel matters. For that reason alone, this Court should again stay the district court's order.[2]

---

[2] The en banc Court's refusal to vacate last year's stay also cuts in the government's favor. Although Chief Judge Srinivasan reserved whether the district court could enforce prong three of the preliminary injunction by ordering specific personnel actions, *Widakuswara v. Lake*, No. 25-5144, 2025 WL 2787974, at *1 (D.C. Cir. May 28, 2025) (Srinivasan, C.J., statement respecting the denial of reconsideration en banc), the order on appeal is not an order enforcing prong three; instead, it is akin to the stayed prong one of the preliminary injunction.

## II.    The Government Remains Likely To Prevail on the Merits.

Setting aside this Court's stay order, the district court and Plaintiffs have together offered three main arguments to defend the injunction and resist a stay.  None withstands scrutiny.  The district court has no authority under the APA to reverse personnel actions and thus circumvent the CSRA channeling regime.

### A. The district court's pivot to the union plaintiffs is futile.

In denying Defendants' stay motion, the district court shifted ground. Instead of focusing on the third-party plaintiffs as in the summary judgment order (Op. 16-18), the court said a stay was unjustified because the *union* plaintiffs may seek review of personnel actions (Dkt. 228 at 3).

This *post hoc* rationalization does nothing to undermine Defendants' likelihood of success.  Indeed, even Plaintiffs do not defend the district court's new theory.  Unions represent employees.  Allowing union plaintiffs to circumvent the CSRA in a challenge to personnel actions would render the CSRA a dead letter.  Courts have accordingly rejected such attempts. *See, e.g.*, *Am. Foreign Serv. Ass'n v. Trump*, 792 F. Supp. 3d 116, 133, 137-39 (D.D.C. 2025); *Nat'l Treasury Emps. Union v. Trump*, 770 F. Supp. 3d 1, 8 (D.D.C. 2025). This Court should do the same.

### B. A court cannot undo personnel actions simply because they may relate to otherwise-reviewable final agency actions.

Instead of defending the district court's theory, Plaintiffs argue that the court was entitled to set aside the placement of employees on administrative leave because that action supposedly flowed from the so-called "Statutory Minimum Memorandum" that the court vacated under the APA. *See* Opp. 13-14, 18-19. That is plainly wrong as a matter of both law and fact.

On the law, Plaintiffs' argument is refuted by the Supreme Court's recent stay decision in *NIH v. APHA*, 145 S. Ct. 2658 (2025). In *NIH*, plaintiffs challenged both "agency guidance [that] discusse[d] internal policies related to grants" and grant terminations made pursuant to that guidance. The Court explained that those "claims are legally distinct." *Id.* at 2661 (Barrett, J., concurring).[3] "Vacating the guidance does not reinstate terminated grants"; "[e]ven if the guidance and grant terminations are linked, vacating the guidance does not necessarily void decisions made under it." *Id.* And the court could not separately vacate the grant terminations, either, as that would "end-run" the applicable channeling scheme. *Id.* at 2661-62.

---

[3] Justice Barrett's concurrence is the controlling opinion in the Supreme Court's divided 4-1-4 disposition.

The same is true here. The Statutory Minimum Memorandum and the administrative leave decisions are separate agency actions, so vacating one does not suffice to vacate the other—even if they are "related" or "linked." *Id.* at 2661. And even if the Statutory Minimum Memorandum is subject to vacatur under the APA (a question not presented at this stage), the CSRA does not permit a court to separately vacate the personnel decisions. Despite appreciating that very concept and the limits of its remedial jurisdiction in the context of contract terminations, Op. 18-21, the district court failed to apply the same principle to personnel actions.

Plaintiffs' argument also fails on the facts. In *NIH*, grant terminations *followed* the policy guidance and were allegedly taken "pursuant to [that] policy." 145 S. Ct. at 2671-72 (Barrett, J., concurring). (And that still was not enough to cause the former to fall with the latter. *See id.*) Here, the March 15 administrative-leave actions were taken *before* the March 18 Memorandum. Order 1-2; *see* Appellees' Add. 3-5. The district court described the Memorandum as a "written document that reflected the agency's decision to reduce its *future* operations." Op. 22 (emphasis added). A challenge to the Memorandum therefore cannot possibly warrant vacating separate actions completed *before* the Memorandum was issued.

### C. Third parties may not seek review of personnel actions.

Returning to the district court's original theory, the third-party plaintiffs do not change the outcome. If the affected employees are limited to seeking relief through the CSRA regime, third parties cannot manufacture APA jurisdiction in the district court. *See* Stay Mot. 11-14.

In response, both the district court and Plaintiffs contend that the non-employee Plaintiffs cannot be "channeled" into the CSRA regime because they are not employees and have no CSRA rights; accordingly, they must be entitled to invoke the APA to remedy their injuries. *See* Dkt. 228 at 4-5; Opp. 12. This contention, and Plaintiffs' resulting parade of horribles (Opp. 10-13), attacks a strawman. A "non-federal-employee plaintiff who is harmed by an agency's decision to sideline its staff in pursuit of an unlawful plan that disrupts the government services upon which the plaintiff relies" (Opp. 10) indeed has plenty of recourse, as the government has maintained from the outset. Downstream consumers of government services may bring an APA action to vacate an unlawful plan to end or to reduce those services or to compel the agency to provide them. But because no downstream consumer has a cognizable right to a particular number of employees at an agency, they are not entitled to a reinstatement order under the APA.

Any litigation, and any resulting remedy, must reflect this distinction. To borrow the district court's hypothetical, *see* Dkt. 228 at 3, if the Nuclear Regulatory Commission placed on administrative leave every employee relevant to the Yucca Mountain Nuclear Storage Project and therefore could not comply with the law concerning the licensing process for nuclear waste storage facilities, the proper remedy would be an order directing the agency to "promptly continue with the legally mandated licensing process," *In re Aiken County*, 725 F.3d 255, 267 (D.C. Cir. 2013), not an order directing the NRC to bring back particular employees.  To be sure, the agency might well choose to comply with the APA remedy by reinstating certain employees— but it might also choose to retain contractors or outsource to another agency under the Economy Act.  Any APA remedy must focus on redressing the harm to the consumer of government services, not micromanaging the way the agency provides those services through its personnel decisions.

Accordingly, if RSF or TNG-CWA are harmed by USAGM's failure to provide a certain program required by statute, nobody disputes they may sue under the APA to seek appropriate relief.  But that does not include an order directing specific personnel actions, in which these plaintiffs have no cognizable interest and which are separately governed by the CSRA.

8

In all events, RSF and TNG-CWA cannot establish either the standing or irreparable harm necessary to seek an injunction of this sort.[4]

For one, the court's reliance on a year-old declaration, dating back to a period when VOA broadcasting had effectively ceased, is insufficient to show imminent irreparable harm. *See* Stay Mot. 15-16. In its stay order, the district court tried to shift the burden by faulting the government for relying on "forward-looking statements about intended agency operations" to demonstrate changed circumstances. Dkt. 228 at 5. Plaintiffs likewise object that "Defendants have submitted no evidence that they have resumed programming" in various locations. Opp. 15. But it is *Plaintiffs'* burden to prove both standing and the irreparable harm necessary for an injunction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Wrenn v. D.C.*, 864 F.3d 650, 667 (D.C. Cir. 2017). The district court had no basis to issue injunctive relief unless RSF and TNG-CWA *still* "face a real and immediate threat of repeated injury," *Murthy v. Missouri*, 603 U.S. 43, 58 (2024), and a year-old declaration—given these intervening actions—does not do the trick.

---

[4] Plaintiffs claim the government forfeited its standing objection. Opp. 15. Not so. Dkt. 189 at 19-22 (challenging standing at summary judgment). And, in any case, "standing is jurisdictional and it can never be forfeited or waived." *Bauer v. Marmara*, 774 F.3d 1026, 1029 (D.C. Cir. 2014).

Plaintiffs also cite a newer declaration—one that the district court did not rely on—but even that declaration contains assertions that appear to be at odds with later developments. *Compare* Dkt. 166-3 ¶ 5 (in November 2025, stating that "VOA went dark" in North Korea), *with* Dkt. 185-1 ¶ 8 (explaining that "Korean … broadcasting resumed in December 2025").

In any case, Plaintiffs miss the more fundamental problem: RSF's and TNG-CWA's allegations of harm are neither caused by nor traceable to the *employment actions*. Their allegations of harm are instead about *service disruptions*. *See, e.g.*, Dkt. 166-3 ¶¶ 5, 8. Explaining its channeling decision, the district court emphasized this point and rejected the argument that their injuries are caused by employment actions, Op. 17; but that only underscores their lack of standing for this remedy. And neither the district court nor Plaintiffs have provided any explanation of why the return of 484 employees is necessary to redress these disruptions.

Plaintiffs misconstrue this argument as one challenging the propriety of universal vacatur. Opp. 17. But this appeal challenges injunctive relief, for which the rule is clear: complete relief "is the maximum a court can provide." *Trump v. CASA, Inc.*, 606 U.S. 831, 854 (2025). This is a command, not an invitation the district court can choose to "decline[]." Dkt. 228 at 6.

## III.    The Equitable Factors Continue To Favor a Stay.

The equities continue to strongly favor a stay for substantially the same reasons this Court explained when granting the earlier stay. *See* Stay Mot. 17-19. In arguing otherwise, Plaintiffs ignore this Court's earlier reasons and distort the record.

Plaintiffs first contend that the government's harm has been remedied by the district court's vacatur of the March 23 compliance deadline. While that vacatur ameliorated the immediacy of the government's harm, it plainly does not eliminate it altogether. *See* Government's Opposition to Motion to Dismiss, Document # 2164890.

Next, Plaintiffs argue that ordering hundreds of employees to be returned from administrative leave somehow "does not interfere with the executive's personnel-related discretion." Opp. 21. But that is facially absurd, and it also directly contradicts this Court's previous holding. *See* *Widakuswara*, 2025 WL 1288817, at *5.

Plaintiffs then stress what this Court acknowledged—"that the public has an interest in the Executive Branch's compliance with congressional mandates"—while omitting this Court's follow-on statement that "the public" also has an important "interest in the Judicial Branch's respect for

11

the jurisdictional boundaries laid down by Congress." *Widakuswara*, 2025 WL 1288817, at *5. By (again) interfering with personnel actions, the district court has (again) strayed outside its jurisdictional lane.

Plaintiffs' only new argument—parroting the district court, Dkt. 228 at 7— is that paying employees to not work is wasteful. Opp. 22. That is true. And that is why the agency announced a reduction in force, but—at plaintiffs' behest—the district court forestalled that too. *See* Dkts. 164, 218. The agency's new Acting CEO is now evaluating the agency's path forward, its personnel levels, and the numbers of employees who should be returned to active status versus subject to a reduction in force. It is the district court's impermissible injunction that is interfering with that process.

## CONCLUSION

For the foregoing reasons, this Court should enter an administrative stay and then, after further consideration of the briefing, enter a stay pending appeal of the district court's injunctive order.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney*
  *General*

DANIEL TENNY

 */s/ Derek Weiss*
DEREK WEISS
ELIZABETH HEDGES
BRANTLEY MAYERS
  *Attorneys*
  *Civil Division, Room 7230*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5365*

  *derek.l.weiss@usdoj.gov*

March 2026

13

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,517 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*/s/ Derek Weiss*

Derek Weiss

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Derek Weiss*

Derek Weiss